UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHAT VAN DUONG (A# 025-131-844), | No.  1:26-cv-02715 DC SCR |
| Petitioner, | |
| v. | ORDER |
| WARDEN, CALIFORNIA CITY DETENTION FACILITY, | |
| Respondent. | |

Petitioner is a civil immigration detainee and is representing himself in this petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I.    Factual and Procedural History**

Petitioner is a native and citizen of Vietnam who was admitted into the United States on or around January 1, 1981.  ECF No. 7-1 at 5.  Petitioner has an extensive history of criminal convictions spanning from 1992 to 2024.  See id. at 10-129 (rap sheet).  On July 30, 1998, an immigration judge ("IJ") ordered petitioner deported to Vietnam on account of two burglary convictions.  Id. at 4-7 (order to show cause); id. at 8-9 (removal order).  On the same day, petitioner was released on an Order of Supervision ("OSUP").  Id. at 125-26.  Petitioner has been issued six OSUPs since his initial release due to violations of the conditions of his release, including the commission of crimes.  See id. at 127-162 (OSUPs).

1

On November 19, 2024, petitioner was convicted of felony first degree burglary in violation of California Penal Code §§ 459-460(a) and sentenced to four years in prison. ECF No. 7-1 at 65-66. On December 26, 2025, Immigrations and Customs Enforcement ("ICE") issued petitioner a Notice of Revocation of Release, informing him that his burglary conviction violated the conditions of his release. Id. at 158-160. ICE took petitioner into custody on the same date. ECF No. 1 at 5, ¶ 19. He is currently detained in the California City Detention Center, within this judicial district. Id. at 3, ¶. 6.

Petitioner filed this habeas petition on April 10, 2026, challenging his "ongoing, prolonged" detention under the Due Process Clause of the Fifth Amendment. ECF No. 1. Petitioner complains that his detention is exacerbating his breathing and other health conditions. He seeks his immediate release or, in the alternative, a bond hearing before an immigration judge ("IJ"). Id. at 17. Respondent opposes the petition and maintains that petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(6) because, at roughly four months, his detention is within the presumptively reasonable six-month period of detention. ECF No. 7 at 3-4 (citing Zadvydas v. Davis, 533 U.S. 678, 701 (2001)). Respondent also offered the declaration of Deportation Officer T. Mears ("Mears Decl.") who states that ICE requested a travel document for petitioner on January 28, 2026, and believes he will be removed "in the reasonably foreseeable future." Meers Decl. 14, ECF No. 7-1 at 3. Meers adds ICE has "been successful in removing similarly situated individuals to Vietnam over the past year." Id.

**II.      Immigration Detention Framework After a Final Order of Removal**

The statutory and regulatory framework governing petitioner's original order of removal, his release on immigration supervision, and the subsequent revocation of his supervision is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

Petitioner was ordered removed to Vietnam by an IJ on July 30, 1998, pursuant to 8 U.S.C. § 1182(a)(1)(A), on account of two burglary convictions. ECF No. 7-1 at 4-9. The

2

detention of noncitizens like petitioner who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a).  "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022).  After this 90-day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'"  Arteaga-Martinez, 596 U.S. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

The Supreme Court examined the constitutional limits of detention under § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]"  533 U.S. at 692.  Zadvydas read an implicit due process limitation into the immigration statute governing the removal of noncitizens subject to a final order of removal in order to avoid serious constitutional problems.  The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.  As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Zadvydas, 533 U.S. at 699. In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six-month period of detention.  Id. at 701.  If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  Id.

Regulations issued by the Department of Homeland Security ("DHS") in the wake of Zadvydas require internal review of the ongoing detention of a noncitizen who has a final removal order.  See Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 2001 WL 1408247 (Nov. 14. 2001).  After the 90-day removal period has

expired, a noncitizen may request a review of whether there is a "significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). If it is determined that there is no significant likelihood of removal in the reasonably foreseeable future, the government "shall promptly make arrangements for the release of the [noncitizen] subject to appropriate conditions." 8 C.F.R. § 241.13(g)(1). The specific conditions of supervision are described in INA § 241(a)(3) and 8 C.F.R. § 241.5. See 8 C.F.R. § 241.13(h)(1).

DHS's decision to revoke petitioner's release is governed by 8 C.F.R. § 241.13(i). Under these regulations, DHS can revoke an order of supervision only when (1) the noncitizen violates a condition of release; or (2) "on account of changed circumstances," DHS "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). The regulations also set out "revocation procedures," including the requirement that DHS "conduct an initial informal interview promptly" after de-detention to "afford the [noncitizen]an opportunity to respond to the reasons for revocation stated in the notification." Id. § 241.13(i)(3). Courts have found these regulations to be enforceable in habeas actions. See Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) ("As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.") (quotations and citation omitted).

### III.   Analysis

#### A.   Nature of Petitioner's Claims

As noted above, petitioner asserts a claim under the Due Process Clause of the Fifth Amendment. The form petition petitioner utilized challenges his "ongoing, prolonged" detention "without a hearing" before "a neutral decisionmaker" where his detention must be "justified by clear and convincing evidence of flight risk or danger, even after consideration whether alternative to detention could sufficiently mitigate that risk." ECF No. 1 at 16-17. This is in the nature of a procedural due process claim and does not expressly invoke either Zadvydas or the regulations implementing Zadvydas.

4

However, the primary remedy that petition seeks is an order of release, as opposed to a detention hearing before an immigration judge (which petitioner requests as an alternative remedy). ECF No. 1 at 17. Respondents also treat this as a Zadvydas-type petition in their return. ECF No. 7 at 3-4. The Court too believes that this case fits most naturally within the Zadvydas framework and the regulations implementing that decision. Given that petitioner is proceeding pro se and in light of the "scope and flexibility of the writ—its capacity to reach all manner of illegal detention—its ability to cut through barrier of form and procedural mazes," Harris v. Nelson, 394 U.S. 286, 291 (1969), the Court accordingly construes the petition as raising Zadvydas-type issues. See Asfestani v. Current or Acting Field Off., No. 1:25-cv-1562 SCR, 2025 WL 3677321, at *4 (E.D. Cal. Dec. 18, 2025) (construing similarly structured pro se habeas petition as seeking relief pursuant to Zadvydas).

**B. Under Zadvydas, Petitioner's Preventive and Indefinite Detention Violates Due Process**

Respondents' primary argument is that because petitioner has been detained for approximately four months, he is "within the presumptively reasonable six-month detention period" set forth in Zadvydas.[1] ECF No. 7 at 3-4. However, the fact that a noncitizen has been in custody less than six months does not foreclose a claim that his or her detention is unlawful under Zadvydas. "Zadvydas did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, *since* interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal." Clark v. Martinez, 543 U.S. 371, 384 (2005) (citing Zadvydas,

---

[1] The undersigned has followed other courts in finding that noncitizens' prior period of post-final order detention should be aggregated with the current period in determining whether they remain within the presumptively reasonable six-month period. See Asfestani, 2025 WL 3677321, at *4 (collecting cases). Here, it is possible that petitioner has cumulatively spent more than six months in detention since his removal order in July 1998 given the record reflects no less than seven arrests by ICE during that time. See ECF No. 7-1 at 13-14. However, the record does not specify the length of time, if any, that petitioner spent in immigration detention after those arrests. Therefore, the undersigned proceeds as if petitioner's detention has not yet reached six months.

533 U.S. at 697-99) (emphasis in original); see also Uzzhina v. Chestnut, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, *3 n. 3 (E.D. Cal. Dec. 2, 2025) ("The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under Zadvydas."); Trinh v. Homan, 466 F.Supp.3d 1077, 1092 (C.D. Cal. 2020) (explaining that "[a]t no point did the Zadvydas Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period"); Medina v. Noem, 794 F. Supp. 3d 365, 375 (D. Md. 2025) (noting that "what Zadvydas did make clear was that it was adopting a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed"); Vijdani v. Mattos, No. 2:25-cv-02496-GMN-EJY, 2026 WL 560209, at *3-4 (D. Nev. Feb. 27, 2026) (collecting cases concluding the same).  Petitioner here has overcome the presumption of reasonableness under Zadvydas for two reasons.  First, ICE has been unable to remove him to Vietnam since he was first ordered removed in 1998, despite having rearrested him multiple times during that period.  Moreover, ICE did not even request a travel document for him until he had been detained for more than one month.  See Meers Decl. ¶ 14, ECF No. 7-1 at 3.

Nor does petitioner's criminal history or recent release from prison offer an independent basis for ICE to detain petitioner.  Zadvydas repudiated the use of "preventative" immigration detention, i.e., detention for the purposes of "protecting the community[,]" where removal is not reasonably foreseeable.  See Zadvydas, 533 U.S. at 690-91.  The Supreme Court explained:

> [W]e have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections. Compare [Kansas v. Hendricks, 521 U.S. 346 (2017)] (upholding scheme that imposes detention upon "a small segment of particularly dangerous individuals" and provides "strict procedural safeguards"), and [United States v. Salerno, 481 U.S. 739, 747, 750–752 (1987)] (in upholding pretrial detention, stressing "stringent time limitations," the fact that detention is reserved for the "most serious of crimes," the requirement of proof of dangerousness by clear and convincing evidence, and the presence of judicial safeguards), with Foucha [v. Louisiana, 504 U.S. 71, 81–83 (1992)] (striking down insanity-related detention system that placed burden on detainee to prove nondangerousness). In cases in which preventive detention is of potentially indefinite duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger.  See Hendricks, supra, at 358, 368[.]
>
> The civil confinement here at issue is not limited, but potentially permanent. Cf.

6

Salerno, supra, at 747[,] (noting that "maximum length of pretrial detention is limited" by "stringent" requirements); Carlson v. Landon, 342 U.S. 524, 545–546 [] (1952) (upholding temporary detention of [noncitizen] during deportation proceeding while noting that "problem of . . . unusual delay" was not present). The provision authorizing detention does not apply narrowly to "a small segment of particularly dangerous individuals," Hendricks, supra, at 368[,] say, suspected terrorists, but broadly to [noncitizens] ordered removed for many and various reasons, including tourist visa violations. See 8 U.S.C. § 1231(a)(6) …; cf. Hendricks, 521 U.S., at 357–358[,] (only individuals with "past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future" may be detained). And, once the flight risk justification evaporates, the only special circumstance present is the [noncitizen's] removable status itself, which bears no relation to a detainee's dangerousness. Cf. id., at 358[;] Foucha, supra, at 82[.]

Moreover, the sole procedural protections available to the [noncitizen] are found in administrative proceedings, where the [noncitizen] bears the burden of proving he is not dangerous, without (in the Government's view) significant later judicial review.  Compare 8 C.F.R. § 241.4(d)(1) (2001) (imposing burden of proving nondangerousness upon [noncitizen]) with Foucha, supra, at 82[,] (striking down insanity-related detention for that very reason). This Court has suggested, however, that the Constitution may well preclude granting "an administrative body the unreviewable authority to make determinations implicating fundamental rights." Superintendent, Mass. Correctional Institution at Walpole v. Hill, 472 U.S. 445, 450[] (1985) (O'CONNOR, J.); see also Crowell [v. Benson, 285 U.S. 22, 62 (1932)] (Brandeis, J., dissenting) ("[U]nder certain circumstances, the constitutional requirement of due process is a requirement of judicial process"). The Constitution demands greater procedural protection even for property.  See South Carolina v. Regan, 465 U.S. 367, 393 [] (1984) (O'CONNOR, J., concurring in judgment); Phillips v. Commissioner, 283 U.S. 589, 595–597 [] (1931) (Brandeis, J.).  The serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection is obvious.

Zadvydas, 533 U.S. 690-92.[2]

Petitioner's detention here is preventative.[3]  It is untethered to the foreseeability of removal, which is evident from notice of revocation, which cites only petitioner's criminal convictions as changed circumstances warranting re-detention.  See ECF No. 7-1 at 159.

Moreover, the fact that ICE did not request a travel document until January 28, 2026, more than a

_____

[2]  The undersigned changed "alien" to "non-citizen" in these passages.  This has become commonplace among jurists at the Supreme Court and Ninth Circuit in recent years.  See Patel v. Garland, 596 U.S. 328 (2022) (Barrett, J.); United States v. Palomar-Santiago, 593 U.S. 321 (2021) (Sotomayor, J.); Barton v. Barr, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))); Avilez v. Garland, 69 F.4th 525 (9th Cir. 2023); Arce v. United States, 899 F.3d 796 (9th Cir. 2018).

[3]  Although the notice of revocation does not cite a specific regulation, it appears to be a revocation for violation of conditions of release pursuant to 8 C.F.R. § 241.13(i)(1).

7

month after revoking petitioner's release, demonstrates that ICE detained him based on some public safety rationale but without any meaningful process—such as a neutral detention hearing—to determine whether such detention was warranted.  Mears Decl. ¶ 14, ECF No. 7-1 at 3.  Respondent does not claim petitioner is a "specially dangerous" individual or that there are special circumstances present that contribute to any such danger.  See Zadvydas, 533 U.S. at 691.

As explained in more length below, there is no clear prospect of removal.  Petitioner's re-detention based on a two-year-old conviction for which petitioner has already served his time thus effectively serves as an impermissible secondary detention scheme.[4]  See Zadvydas, 533 U.S. at 690 (immigration proceedings "are civil, not criminal, and we assume that they are nonpunitive in purpose and effect."); Doe v. Becerra, 732 F. Supp. 3d 1071, 1078 (N.D. Cal. 2024) ("The Supreme Court held more than a century ago that civil detention of a removeable noncitizen violates the Constitution if it is punitive.") (citing Wong Wing v. United States, 163 U.S. 228, 237–38 (1896)).  In sum, Zadvydas does not permit the government carte blanche to detain noncitizens for six months based on a violation of an OSUP.  When, as here, the detention is preventative and potentially indefinite, Zadvydas requires more.

Finally, the revocation of petitioner's release was not accompanied by "strong procedural protections."  Zadvydas, 533 U.S. at 691.  As a threshold matter, the regulations purporting to authorize petitioner's re-detention based on an OSUP violation do not require a hearing before a neutral decision maker or some other similarly strong procedural protection.  Moreover, respondent acknowledges that "the government was not able to provide evidence that an informal interview was provided to the petitioner under 8 C.F.R. § 241.13."  ECF No. 7.  District Judge Coggins has found that the government's failure to provide the informal interview alone renders a re-detainment unlawful.  See Phan v. Beccerra, No. 2:25-CV-01757-DC-JDP, 2025 WL 1993735 (E.D. Cal. July 16, 2025) (finding that the petitioner was likely to succeed on merits of due process claim "[b]ecause there is no indication that an informal interview was provided," and

---

[4] California's criminal sentencing laws already account for "public safety" in determining how long a convicted individual should be removed from society.  See Cal. Pen. Code § 1170(a)(1) ("The Legislature finds and declares that the purpose of sentencing is public safety achieved through punishment, rehabilitation, and restorative justice[.]").

collecting cases).  Respondents argue that Phan is distinguishable in that the petitioner there did not have an extensive criminal record.  ECF No. 7 at 4.  But the regulations require an informal interview regardless of the reason for re-detention, so that the noncitizen can contest the basis of the revocation of release: "The [noncitizen] may submit any evidence or information that he or she believes shows . . . that he or she has not violated the order of supervision."  8 C.F.R. § 241.13(i)(3).  In this case, the basis for revocation was petitioner's criminal convictions.  ECF No. 7-1 at 159.  Thus, petitioner's criminal history provides no reason to depart from Phan.

Given that petitioner's current detention of more than four months is no longer presumptively reasonable and that a public safety rationale cannot independently authorize his detention absent strong procedural protections, the burden shifts to respondent to demonstrate the reasonable foreseeability of petitioner's removal.  ICE has reportedly requested a travel document for petitioner.  But numerous courts have recently held that requests for travel documents from Vietnam, alone, are insufficient to show a "significant likelihood" of removal.  See Nguyen v. Charles, No. 1:25-cv-1592 TLN CSK, 2025 WL 3492117, at *4 (E.D. Cal. Dec. 4, 2025) (collecting cases); Hoac v. Becerra, No. 2:25-cv-1740 DC JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around.").  An ICE officer submitted a declaration indicating a belief that petitioner will be removed "in the reasonably foreseeable future[,]" and adding that ICE has "been successful in removing similarly situated individuals to Vietnam over the past year."  Meers Decl. ¶ 14, ECF No. 7-1 at 3.  However, absent specific information about the progress of ICE's attempts to secure a travel document, the undersigned finds that respondent has not shown that petitioner's removal is reasonably foreseeable.  "[W]hile this evidence supports Respondents' argument that the Government of Vietnam is accepting repatriation of more citizens generally, it does little to establish the likelihood of Petitioner's removal in the absence of evidence about what steps Respondents have taken to deport him specifically."  Nguyen v. Scott, No. 2:25-cv-1398, 2025 WL 2165995, at *8 (W.D. Wash. July 30, 2025); see also Phan v. Warden of Otay Mesa Det. Facility, No. 25-cv-2369 AJB BLM, 2025 WL 3141205, at *4 (S.D.

9

Cal. Nov. 10, 2025) ("[E]vidence that Respondents have successfully removed other Vietnamese citizens is insufficient to demonstrate a significant likelihood that *Petitioner* will receive a travel document.") (emphasis in original). Because the continued detention of petitioner is "unreasonable and no longer authorized," see Zadvydas, 533 U.S. at 680, the undersigned recommends that the habeas petition be granted and respondents be ordered to immediately release petitioner.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.     Petitioner's (A# 025-131-844) application for a writ of habeas corpus (ECF No. 1) be GRANTED.

2.     Respondents be directed to immediately release petitioner.

3.     Respondents be directed to file a notice of compliance within three (3) days of any order adopting these findings and recommendations.

4.     Petitioner's motion to appoint counsel (ECF No. 3) be DENIED as moot.

5.     The Clerk of the Court be directed to:

a.   Serve California City Detention Facility with a copy of this Order; and

b.   Enter judgment in petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties

////

////

////

10

are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 6, 2026

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE